Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 07-1833

UNITED STATES,

Appellee,

v.

STEVEN G. BRAME,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Howard and Selya, Circuit Judges
and Stafford,* Senior District Judge.

Mark Diamond on brief for appellant.
Margaret D. McGaughey, Appellate Chief, and Paula D. Silsby,
United States Attorney, on brief for appellee.

July 11, 2008

---

* Of the Northern District of Florida, sitting by designation.

**Stafford**, <u>**Senior District Judge**</u>.  The appellant, Steven G. Brame ("Brame"), appeals from his conviction and sentence in this drug and firearms case.  We affirm.

## I. <u>BACKGROUND</u>

On the evening of May 6, 2006, the shift manager at a McDonald's restaurant in Portland, Maine, called 911 to report that he had just witnessed what he believed was a drug transaction in the men's bathroom at the restaurant.  He described one of the men as white, with a handlebar mustache and wearing a jean jacket; the other he described as black, wearing a blue T-shirt, baggy jeans, and a gold chain.

Responding quickly to the shift manager's call to law enforcement, two police officers approached the restaurant as a black man matching the shift manager's description was seen leaving the premises.  After speaking briefly with the shift manager, the officers located the suspect as he emerged from a nearby convenience store.  Introducing themselves, the officers explained that they were investigating a drug transaction that had been observed minutes earlier in the restaurant.  Acting "very nervous and fidgety," looking all around but never making eye-contact with the officers, the suspect admitted that he had been in the bathroom at McDonald's.  He explained that he was there with his boss and that the two had exchanged money for some work that one of them had done for the other.  When the officers asked about the nature of

the work, the suspect "clammed up."

The suspect pulled a wallet from his pocket after the officers asked for identification. As he did so, one of the officers saw and grabbed a pocket knife that was also in the suspect's pocket. Fearing that the suspect might try to run, the officers asked the suspect to sit down on the steps leading into the convenience store. Seated, the suspect continued to fumble through his wallet looking for identification, ultimately producing an identification card in the name of Steven Brame.

Asked by the officers if he had any contraband, drugs, weapons, needles, or similar items in his possession, Brame responded in the negative. Continuing to appear nervous and animated, Brame repeatedly put his hands in the pockets of his baggy jeans despite instructions to the contrary. Concerned that Brame might have a weapon, the officers asked Brame to turn his pockets inside out. Brame responded by pulling a small portion of his pockets out. He did not, however, empty his pockets.

At some point, Brame stood up. As he did so, the officers could see by the sway of his pants that Brame had a heavy object in one of his pockets. The officers immediately told Brame to put his hands behind his back. Brame refused to comply and instead became "semi-aggressive." Each officer then grabbed one of Brame's arms and pushed Brame against the wall of the building. Brame resisted the entire time. As he was being placed in

handcuffs, Brame said: "It's in my pocket." One of the officers then looked down and saw the butt end of a handgun in Brame's pocket. The officers then frisked Brame, seizing a loaded handgun, the serial number of which had been obliterated, and a small plastic baggie of crack cocaine that was located in the waistband of Brame's boxer shorts. Brame was then placed under arrest. At no time during the stop was Brame advised of his Miranda rights.

Brame was later charged in a four-count indictment with (1) possession of five grams or more of cocaine base in violation of 21 U.S.C. § 844(a) (Count One); (2) possession of a handgun during and in relation to the felony described in Count One, in violation of 18 U.S.C. § 924 (Count Two); (3) possession of a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Three); and (4) possession of a firearm that had an obliterated manufacturer's serial number in violation of 18 U.S.C. §§ 922(k) and 924(a)(2) (Count Four).

Brame filed multiple motions to suppress after he was arraigned. The district court denied Brame's motions, finding that the officers lawfully stopped Brame for investigative questioning, lawfully arrested him on suspicion of having committed a crime, and lawfully seized the physical evidence taken from Brame's person. The district court also determined that, with respect to any statements made by Brame during his encounter with the officers, Miranda warnings were not required until Brame was arrested or "in

-4-

custody." Because the government agreed not to use, as evidence against Brame, any statements made by Brame after his arrest, the district court found no basis for suppression of any of Brame's statements.

Brame appeared before the district court on January 3, 2007, to enter a conditional plea of guilty to all four counts of the indictment. The court explained that, as to Count One, Brame faced at least five years in prison but could be sentenced up to 20 years. As to Count Two, the court advised Brame that he was "subject to a term of imprisonment that must be at least five years and can be as much as life and has to be consecutive to the sentence on Count One." On each of Counts Three and Four, Brame was advised that the maximum penalty was ten years. Asked if he understood these penalties, Brame replied: "Yes, sir." After finding that there was a factual basis for the plea, that Brame understood and voluntarily waived the rights he was surrendering by pleading guilty, that Brame understood the penalties he was facing, and that Brame was entering his plea voluntarily, the district court accepted Brame's plea, conditioned on his right to appeal the suppression rulings.

Brame was sentenced on May 23, 2007, to 144 months in prison, the bottom of the Guidelines range of 144 to 165 months. This sentence consisted of 84 months on Counts One, Three and Four, to run concurrently, plus 60 months on Count Two, to run

consecutively.

## II. SUPPRESSION ISSUES

Brame contends that the district court erred when it denied his motions to suppress. According to Brame, and contrary to the district court's findings, the police had neither reasonable suspicion to stop and question him nor probable cause to search and arrest him. Brame also contends, again contrary to the district court's findings, that he was subjected to unlawful custodial interrogation throughout his encounter with the officers.

We review a district court's findings of fact on a suppression motion for clear error and its conclusions of law *de novo*. United States v. Vilches-Navarrete, 523 F.3d 1, 12 (1st Cir. 2008). Applying that mixed standard of review, we find no error in the district court's denial of Brame's motions to suppress.

The record amply reveals that the officers' initial stop of Brame was appropriate under Terry v. Ohio, 392 U.S. 1, 20 (1968) (holding that a brief, investigative stop of a suspect requires only a reasonable suspicion of wrongdoing). The shift manager at McDonald's called 911 to report that he saw two men—whom the manager well described—engaged in a drug transaction in the restaurant's bathroom. When officers arrived at the restaurant moments later, they saw a man who fit the manager's description leaving the restaurant. After briefly talking with the manager, the officers stopped the man for questioning. At that time, the

officers clearly had reasonable suspicion that the man had just taken part in a drug trafficking offense in the McDonald's bathroom.

During the course of the investigatory stop, the suspect—ultimately identified as Brame—acted in a nervous and fidgety manner, avoided eye contact with the officers, "clammed up" when asked to explain his story about what happened in the bathroom, kept returning his hands to his pockets despite instructions to the contrary, and failed fully to comply when the officers directed him to turn his pockets inside out. Aware that a heavy object was in one of Brame's pockets, the officers asked Brame to put his hands behind his back. Brame refused and, instead, became increasingly angry and aggressive. Given Brame's behavior, the officers placed Brame in handcuffs and frisked him.

That the officers placed Brame in handcuffs did not elevate the Terry stop into a full-blown arrest. The use of handcuffs during the course of a stop is appropriate if officers reasonably believe that handcuffs are necessary to protect the officers, the public, or the suspect during the stop. United States v. Acosta-Colon, 157 F.3d 9, 18 (1st Cir. 1998). As noted in Acosta-Colon, "[p]olice officers engaged in an otherwise lawful stop must be permitted to take measures—including the use of handcuffs—they believe reasonably necessary to protect themselves from harm, or to safeguard the security of others." Id. Here, in

light of Brame's belligerent behavior and the officers' objectively reasonable fears that Brame might be armed, the use of handcuffs was entirely appropriate.

That the officers frisked Brame was also not inconsistent with a Terry stop. As the Supreme Court held in Terry, when an individual is subject to a lawful investigative stop, an officer may conduct a limited frisk of that individual for weapons. Terry, 392 U.S. at 26-27. Given the circumstances in this case, a precautionary frisk was clearly warranted.

Not until the frisk resulted in the discovery of both a loaded weapon as well as drugs did the officers place Brame under arrest. Then, if not before, the officers had probable cause to believe that Brame had committed a drug trafficking offense. His arrest and the concomitant seizure of the items found on his person were accordingly lawful. Brame's argument to the contrary—that he was subjected, much earlier, to a *de facto* arrest without probable cause—is without merit.

Once Brame was arrested, the officers should have advised Brame of his Miranda rights. The government, however, appropriately addressed the officers' Miranda violation by agreeing not to introduce any statements made by Brame subsequent to his arrest. With respect to the statements made by Brame before his arrest, relief under Miranda is not warranted.

In sum, like the district court, we find no merit to

Brame's suppression arguments.  We will accordingly affirm the district court's denial of Brame's motions to suppress.

### III. CONSECUTIVE SENTENCE

Brame contends that he was improperly sentenced to a consecutive sentence for carrying a firearm during a drug trafficking crime.  Specifically, he contends that there was insufficient evidence to establish that he possessed the firearm in furtherance of a drug trafficking offense.  Because Brame did not raise this issue before the district court, we review for plain error.  To vacate Brame's sentence for plain error, we must find that (1) there was error; (2) the error was plain and obvious; (3) the error affected Brame's substantial rights; and (4) the error impaired the fairness, integrity, or public reputation of the judicial proceedings.  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

We note initially that Brame entered a conditional plea of guilty to all four counts of the indictment.  Before Brame entered his plea, the government described the evidence that it planned to introduce at trial.  Defense counsel assured the court that he had discussed the government's proffer with Brame.  After hearing that defense counsel was satisfied that the government's evidence was sufficient to convict Brame on all four counts, the court asked Brame whether he disagreed with the government's proffer.  Brame said that he did not disagree with any part of the

proffer.  Indeed, Brame said that, to the best of his knowledge, the information proffered by the government was true.  The district court thereafter announced that it found a factual basis for Brame's plea.

Contrary to what he professed at the plea hearing, Brame now contends that the government's evidence was *not* sufficient to establish that he possessed a firearm in furtherance of a drug trafficking offense as charged in Count Two.  We are unpersuaded.  The government's evidence, which Brame did not dispute, revealed that (1) soon after a witness observed Brame in what appeared to be a drug trafficking transaction, Brame was found with both a baggie of crack cocaine and a loaded, operable handgun concealed on his person; (2) Brame was, at the time, a convicted felon who could not lawfully possess a handgun; and (3) the serial number on the handgun had been unlawfully obliterated.  Such evidence provided ample basis for Brame's guilty plea.  The district court's decision to impose a consecutive five-year sentence for carrying a firearm in furtherance of a drug trafficking felony was not erroneous, much less plainly erroneous.[**]

## IV. PRIOR CONVICTIONS

Brame challenges the district court's use of two prior convictions for purposes of enhancing his sentence.  According to

---

[**] Because we find no error, we need not consider whether Brame has waived the right to assert this ground of appeal.

Brame, there was insufficient evidence to establish that he was the individual convicted of those two crimes. We review the district court's findings of fact with respect to prior convictions for clear error. United States v. Santos, 363 F.3d 19, 22 (1st Cir. 2004).

Brame filed written objections to his probation officer's Presentence Report, challenging, among other things, the inclusion in his criminal history of two prior convictions involving an individual named "Frank Lollis." Brame contends that those convictions should not have been attributed to him. In his presentence interview, however, Brame admitted that he used the alias "Frank Lollis." Moreover, according to Brame's probation officer, the court documents in each of the two cases revealed that "Steven Brame" was either the name of the defendant or an alias used by the defendant. The same address, including apartment number, was listed for the individual charged in those two cases; and, when the district court asked defense counsel whether Brame disputed the statement that he purportedly made to the presentence investigator, namely, that he used the alias "Frank Lollis," counsel replied in the negative. Based on the evidence presented to it, the district court overruled Brame's objection to the addition of criminal history points for the two prior convictions, finding, as a matter of fact, that the two convictions were properly attributed to Brame. We find no clear error in the

district court's factual finding.

## V. <u>AMENDMENT 706</u>

Months after Brame was sentenced, Congress amended the Sentencing Guidelines to lower by two levels the base offense level for many crack cocaine offenders. U.S.S.G § Amend. 706. Brame was sentenced in May of 2007, more than five months *before* Amendment 706 became effective on November 1, 2007. Brame mistakenly asserts that Amendment 706 became effective before his May sentencing. Based on his mistaken assertion, Brame contends that he should have received the benefit of Amendment 706 at the time of his sentencing. His contention is without merit. He may be entitled to the benefit of Amendment 706, but he must seek relief initially in the district court through 18 U.S.C. § 3582(c)(2). Because his challenge here is premature, we take no view as to whether or not Brame is entitled to the benefit of Amendment 706.

## VI. <u>CONCLUSION</u>

For the reasons explained above, we AFFIRM the judgment of the district court. We REMAND the case to the district court where Brame may file, if he wishes, a motion for reduction in sentence pursuant to the recent Guidelines amendment that lowers the Guidelines sentencing range for certain categories of offenses involving crack cocaine. U.S.S.G. Amend. 706.